NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                              :
REGINA M. WITKOWSKI,          :
                              :
            Plaintiff,        :          Hon. Dennis M. Cavanaugh
                              :
      v.                      :          **OPINION**
                              :
                              :          Civil Action No: 09-1672 (DMC)
MICHAEL J. ASTRUE,            :
COMMISSIONER OF SOCIAL        :
SECURITY,                     :
                              :
            Defendant.        :
_____:


<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon the appeal of Regina M. Witkowski ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI") under XVI of the Social Security Act ("Act"). This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.

As detailed below, the final decision entered by the Administrative Law Judge ("ALJ"), in the absence of testimony by a vocational expert, must be **remanded** for further proceedings consistent with this Opinion.

-1-

# I. BACKGROUND

### A. PROCEDURAL HISTORY

On January 18, 2005, Plaintiff filed an application for SSI, alleging disability as of February 1, 1997 (Administrative Transcript ( "Tr.") at 28).  Plaintiff's claim was  initially denied on May 26, 2005 (Tr. at 42), and upon reconsideration on January 13, 2006 (Tr. 35 - 36).  Thereafter, Plaintiff filed a timely written request for a hearing before an Administrative Law Judge ("ALJ") on March 13, 2006 (Tr. at 31 - 33).  On September 20, 2007, a hearing was held before the Honorable Brian H. Ferrie, ALJ, and on November 27, 2007 the ALJ denied Plaintiff's claims (Tr. at 11 - 23).  Plaintiff sought review of the desision, but the Appeals Council denied her request on February 6, 2009 (Tr. at  4 - 6).  On November 2, 2009, Plaintiff filed a timely complaint with this Court seeking judicial review.

### B. FACTS

#### 1. Plaintiff's Medical History and Evidence

Plaintiff alleges that she has been disabled since February 1, 1997, as a result of suffering from HIV/AIDS, osteoporosis, depression and mood disorders, and asthma.  This Court summarizes the Plaintiff's medical history and the evidence pertaining to her impairments below.

##### i. *Treating Physician Examination*

On January 10th and January 12, 2000, Plaintiff saw her treating physician Dr. Sodhi for a full exam to determine her employability.  Dr. Sodhi stated in his reports that Plaintiff had AIDS, migraine headaches, and right facial palsy (Tr.135 - 143).  Dr. Sodhi stated that Plaintiff could not do any work, could not participate in a volunteer or community service program, and could not enter school or a vocational training program. (Id.)  Dr. Sodhi indicated that Plaintiff had a limited ability

to climb or stoop due to back pain, nor could she lift because she gets out of breath, but congestive failure was ruled out. (Id.)  Dr. Sodhi also reported that Plaintiff had no sensory deficits or atrophy, and no mental or emotional problems (Tr. at 140-141).  Dr. Sodhi rated Plaintiff's orthopedic impairment as Class III [1] (Tr. at 136) and her disability was estimated for more than one year (Tr. at 143).  The report, however, gave no specific details pertaining to Plaintiff's limitations and provided no additional medical evidence to support the doctor's conclusions other than his observations and Plaintiff's own statements to him (Tr. at 135 - 143).

### ii. *Medical and Social Services for the Homeless Reports*

Plaintiff has been treated, and has participated in, programs with Medical and Social Services for the Homeless ("M.A.S.S.H.") since approximately 1989 (Tr. at 217 - 218). M.A.S.S.H. treatment records covering the period of April 26, 2001 to September 24, 2007 were submitted to the ALJ (Tr. at 172 - 203).  An April 26, 2001 report noted that Plaintiff's viral load was less than 400 and her CD4 count was 308.  The report also stated that Plaintiff sometimes skips the medication she was prescribed to help control her HIV/AIDS (Tr at 178 - 203).  Additional M.A.S.S.H. lab reports on May 15, 2007 revealed a CD4 count of 495 and a viral load of 19,800,000 IU/ml. (Id.)  This same lab report was positive for cannabinoids. (Id.)

On July 19, 2007, M.A.S.S.H. performed a comprehensive psychiatric evaluation conducted by Dr. Nimer Iskandarani. (Tr. at 172 - 177).  In this report, Plaintiff told the doctor that she was unable to cope with certain situations and could not sleep at night (Tr. at 174).  She explained that she constantly cries and yells at kids but does not know why. (Id.)  She further indicated that she gets

---

[1] According to Dr. Sodhi's report, a Class III orthopedic problem is defined as having the functional capacity adequate to perform only little or none of the duties of usual occupation or of self care.

nervous. (Id.)  The doctor concluded that Plaintiff was anxious, had mood swings, and a somewhat non-goal oriented thought process (Tr. at 175).  The doctor furthered observed that even though Plaintiff had racing thoughts and a somewhat distorted perception, she had no hallucinations, was alert and fully oriented, with no memory problems. (Id.)  Plaintiff was diagnosed with polysubstance abuse and mood disorders not otherwise specified. (Id.)  Medication management and counseling were planned and the Plaintiff was prescribed Seroquel (Tr. at 177 - 178).  Lab work dated July 20, 2007 revealed Plaintiff tested positive for cannabinoids (Tr. at 185).

### iii. *Disability Determinations Services Report*

In a 2000 Residual Functional Capacity ("RFC") report, the New Jersey Department of Labor, Division of  Disability Determination Services ("DDS"), found that Plaintiff could do medium work (Tr. at 144 - 151) and that her only medically determinable disease was HIV.  In a more recent RFC report conducted on May 17, 2005, DDS again found that the Plaintiff could do medium work, but noted that in addition to her HIV, she suffers from asthma (Tr. at 164 - 171).  DDS reported that although Plaintiff has asthma, it only limits her ability to work in environments where she would be susceptible to concentrate exposure of fumes, odors, dusts, gases, poor ventilation or other irritating factors (Tr. at 168).

### iv. *Consultative Examination*

On April 15, 2005, DDS conducted a consultative examination performed by Dr. Alexander Hoffman (Tr. at 152 - 163).  During this exam, the Plaintiff reported no specific problems related to her HIV except for occasional fatigue, occasional diarrhea, and one episode of pneumonia (Tr. at 152).  Plaintiff informed Dr. Hoffman that she was recently diagnosed with osteoporosis but was not on medication for the condition. (Id.)  Lab work revealed a history of asthma which Plaintiff controls

using an Albuterol inhaler and nebulizer. Plaintiff reported that she has not had any hospitalizations for acute asthma attacks, nor any recent emergency room evaluations. (Id.) Plaintiff told the doctor that she lives in an apartment and does normal things around her apartment such as cooking, cleaning, shopping, although she cannot carry heavy packages (Tr. at 152 - 153). She also mentioned that she smokes a pack of cigarettes a day (Tr. at 152). Dr. Hoffman reported that upon physical examination, Plaintiff appeared well developed, well nourished, and walked with a normal gait (Tr. at 153). Examination of her chest revealed scattered rhonchi and a few wheezes, but a PFT was normal. (Id.) Plaintiff's heart had a regular rate and rhythm and an EKG revealed sinus bradycardia but was otherwise normal (Tr. at 156). Examination of the upper and lower extremities was unremarkable (Tr. at 153). Dr. Hoffman finally noted that Plaintiff was maintaining her weight and had a decent activity level (Tr. at 154).

## 2. Plaintiff Regina Witkowski's Testimony

At the ALJ Hearing on September 20, 2007, Plaintiff testified that she was 50 years old when she applied for disability benefits on January 18, 2005 (Tr. at 217). Plaintiff further testified that she had a 12th grade education and last worked in 1989 as an underwriter in the insurance industry. (Id.) Plaintiff stated that she worked in that capacity for 10 years, but had not worked in the past 18 years. (Id.) Plaintiff explained that after she lost her job in 1989, she became homeless, went on welfare, and went to the M.A.S.S.H. program (Tr. at 217 - 218). Plaintiff stated she has taken part in the M.A.S.S.H. methadone program steadily for the past 10 years (Tr. at 219) to combat her former heroin addiction, and receives her methadone maintenance every two weeks (Tr. at 226). Plaintiff said that she has seen a psychiatrist once a month for the last 2 to 3 months and that her treating physician, presently Dr. Gregorio, prescribes all of her medications for her AIDS, as well as

medication to help her sleep, but nothing for depression (Tr. at 220 - 221).

In her testimony, Plaintiff maintained that she lives in an apartment (Tr. at 228) with a roommate (Tr. at 226), but cannot function outside the apartment, and consequently she stays home and cries (Tr. at 219). Plaintiff then described her daily activities, testifying that she straightens up the house a little and occasionally goes to the store, but her daughter does her laundry (Tr. at 224). She explained she has tea for breakfast and lunch, watches television, and reads the newspaper (Tr. at 225). Plaintiff testified she can go out to watch movies, but sometimes has difficulty concentrating (Tr. at 228). She further stated that once in a while she helps with her grandchildren during the day because her daughter lives across the hall (Tr. at 226).

When further testifying about her daily activities, Plaintiff testified that she doesn't do anything else and just spends the day looking out the window (Tr. at 227). According to Plaintiff, a lot of people do not associate with her because they know she has AIDS. (Id.) Plaintiff was questioned by her attorney as to whether she had problems sitting, and she testified that she did due to osteoporosis in her back. (Id.)

### 3. The Findings of the Administrative Law Judge

ALJ Ferrie made the following ten (10) findings regarding the Plaintiff's application for SSI: (1) the claimant has not engaged in substantial gainful activity since her application for SSI on January 18, 2005; (2) the claimant's HIV/AIDS is a severe impairment, but her asthma, osteoporosis, and mood disorders are non-severe; (3) the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 416.925 and § 416.926; (4) the claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 416.967 (lift and carry up

to 20 pounds occasionally and 10 pounds frequently; stand/walk up to 6 hours in an 8-hour day; and sit up to 6 hours in an 8-hour day); (5) the claimant has no past relevant work and has not worked since 1989; (6) the claimant was born on February 13, 1954, and was 50 years old which is defined as an individual closely approaching advanced age on the date the application for SSI was filed; (7) the claimant has at least a high school education and is able to communicate in English; (8) transferability of job skills is not an issue because the claimant does not have past relevant work; (9) considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; (10) the claimant has not been under a disability, as defined in the Social Security Act, since January 18, 2005, the date the application was filed.

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).   Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted).  Not all evidence is considered "substantial."   For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.   Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not

evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support his ultimate conclusions.  Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  As such, it does not matter if this Court "acting de novo might have reached a different conclusion" than the Commissioner.  Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)).  "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).  A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  A court must further assess whether the ALJ, when

confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## III.  APPLICABLE LAW

### A.  THE FIVE-STEP PROCESS

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of establishing his or her disability. Id. § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant to 20 C.F.R. § 416.920(a). Under the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties, and is done (or intended) for pay or profit. 20 C.F.R. § 416.972. If the claimant establishes that she is not currently engaged in such activity, the Commissioner then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). The severe impairment or combination of impairments must "significantly limit[]

[a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 416.909.  If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings").  20 C.F.R. § 416.920(d).  Upon such a finding, the claimant is presumed to be disabled and is automatically entitled to benefits.  Id.  If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

Step four requires the Commissioner to determine whether the claimant's residual functional capacity sufficiently allows her to resume her previous work.  20 C.F.R. § 416.920(e).  If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits.  Id.  If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner, who must find that the Claimant can perform other work consistent with her medical impairments, age, education, past work experience and residual functional capacity.  20 C.F.R. § 416.920(g).  Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits.  20 C.F.R. § 416.920(a)(4)(v).

### B.   THE REQUIREMENT OF OBJECTIVE EVIDENCE

Under the Act, disability must be established by objective medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423(d)(5)(A).  Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of

disability as defined in this section."  Id.  Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A).  Credibility is a significant factor.  When examining the record:

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4).

A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## C. ALCOHOL AND DRUG USE

Under the Social Security Act, even if an ALJ determines that an individual is disabled, the ALJ can still preclude an individual from obtaining benefits under 42 U.S.C. § 423(d)(2)(c). Pursuant to this statute,  a person "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  To determine whether alcoholism or drug addiction is a contributing material factor, the ALJ must assess whether he "would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1).  The ALJ is specifically required to "evaluate which . . . current physical or mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's]

-11-

remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2).  "If [the ALJ] determine[s] that [the claimant's] remaining limitations would not be disabling, [the ALJ] will find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(i).

## IV.  <u>ANALYSIS</u>

On appeal, Plaintiff argues that the ALJ erred in denying her claim for SSI for two reasons. First, she asserts the ALJ's decision denying the existence of a disability is not supported by substantial evidence in the record (Pl. Br. 12).  In particular, Plaintiff claims her osteoporosis, depression and mood disorder, and asthma are severe impairments.  Second, she argues that the ALJ's residual functioning capacity determination is without evidentiary foundation.

To assess whether a claimant has established a disability, an ALJ must analyze his or her claims pursuant to the five-step process provided for in the Social Security Act.  20 C.F.R. § 416.920(b).  In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2005, the application date.  Next, at step two, the ALJ found that the Plaintiff's HIV was a severe impairment, but her asthma, osteoporosis, and mood disorders were not severe.  At step three, the ALJ found the Plaintiff not disabled because her impairments did not meet the medical equivalence criteria, and determined at step four that she was capable of performing light work as defined by 20 C.F.R. § 416.967.  Finally, at step five, the ALJ concluded that Plaintiff has the residual functional capacity to perform other jobs which are in significant numbers in the national economy.

### A.  SEVERE IMPAIRMENT DETERMINATION – STEP 2

Plaintiff argues that the ALJ erred in failing to determine that her osteoporosis, mood disorders, and asthma are severe impairments. This Court finds Plaintiff's argument to be without merit. The ALJ's decision as to these conditions was supported by substantial evidence in the record.

### 1. Osteoporosis

At step two of the analysis, Plaintiff bears the burden of introducing sufficient evidence to establish a severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987). Plaintiff contends that the ALJ erred in dismissing the findings of her treating physician, which she submitted in support of her claim. An ALJ may rely on the report of either a treating or consulting physician, and "[w]here the report of a treating physician conflicts with that of a consulting physician," Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989), an ALJ may reject a treating physician's opinion if the ALJ "explain[s] on the record his reasons for rejecting the opinion of the treating physician."[2] Id.; see also, Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). Furthermore, an ALJ may assess the evidence as a whole to reach a conclusion. See Torres v. Barnhart, 139 Fed. Appx. 411 (3d Cir. 2005). See also Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them").

Moreover, in satisfying the burden at step two, the regulations specify that an individual's impairment must be established by medical evidence consisting of signs, symptoms, and laboratory

---

[2] Plaintiff's counsel relies on Allen, 881 F.2d at 41 in arguing that the ALJ erred in failing to credit Dr. Sodhi's diagnosis that Plaintiff was unable to work due to her osteoporosis (Pl. Brief. 20). As discussed above, the ALJ was entitled to reject the treating physician's opinion, as he explained on the record his reasons for rejecting the opinion.

findings, not only by the claimant's statements of symptoms.  See 20 C.F.R. § 416.908.  Regulation § 416.928 further explains that "[s]igns are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms) . . .  They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 416.928(b).  Laboratory findings can be shown by medically acceptable laboratory diagnostic techniques, chemical tests, electrophysiological studies, and x-rays. 20 C.F.R. § 416.928(c).

In the instant case, the ALJ properly weighed the evidence and explained his reasons for rejecting the opinion of Plaintiff's treating physician.  The ALJ reviewed and analyzed the Plaintiff's history of osteoporosis, using the results of the April 15, 2007 consultative examination by Dr. Hoffman, Plaintiff's own statements, 2007 reports from M.A.S.S.H., and the reports from Dr. Sodhi to conclude that the Plaintiff's osteoporosis had no more than a minimal effect on her ability to perform basic work activities and that it was non-severe.  Pursuant to 20 C.F.R. § 416.927, the ALJ gave less weight to the January 10, 2000 and January 12, 2000 reports from Plaintiff's treating physician Dr. Sodhi because of the doctor's failure to furnish supporting evidence of his conclusions or to provide specific details as to Plaintiff's limitations.  See 20 C.F.R. § 416.908; see also Hughes v. Comm'r of Soc. Sec., 297 Fed. App's 123 (3d Cir. 2008) (finding of a non-severe impairment upheld where treating physician failed to set forth any objective basis for the assigned physical limitations in the form of supporting medical evidence other than claimant's statements and physician's opinion).  In addition, the ALJ explained that the consulting physician's April 15, 2005 examination, which was conducted more than five years after her initial examination by her treating physician, concluded that the Plaintiff was well developed, had a normal gait, and had maintained a relatively decent activity level (Tr. 20).  Likewise, 2007 reports from M.A.S.S.H., Plaintiff's own treatment facility, did not document significant problems due to osteoporosis (Tr. at 178 - 203).  Therefore, the ALJ's refusal to give more credit to Plaintiff's treating physician was proper.

When coupled with the Plaintiff's own statements and reports from M.A.S.S.H., there was

-14-

substantial evidence to support the ALJ's determination as to Plaintiff's osteoporosis claim.[3]

## 2. **Psychiatric Impairments**

Plaintiff argues that the ALJ improperly dismissed her claim of depression and mood disorders by attributing them to her May 15th and July 20, 2007 positive tests for marijuana (Pl. Brief. at 22). This contention is not supported by the record. The ALJ properly considered the medical evidence in the record—although he accounted for Plaintiff's drug use in making such a consideration—and found that Plaintiff's depression and anxiety were not severe under 20 C.F.R. § 416.920a(d)(1) (Tr. at 20). This finding is supported by substantial evidence.

"An impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities relate to the ability and aptitude to perform most jobs and include mental functions such as understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to others in a work setting, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b) (3-6). Here, the only evidence in the record pertaining to Plaintiff's allegation of depression and anxiety are reports from M.A.S.S.H. and the Plaintiff's own testimony.

Transcripts from the September 20, 2007 hearing before the ALJ reveal contradictory statements made by Plaintiff when describing her daily activities. Plaintiff testified that she cannot function and stays home and cries (Tr. at 219), but then testified that she helps with her grandchildren during the day (Tr. at 226), straightens up the house, goes to the store, and goes to her methadone program (Tr. at 224). Findings from a July 19, 2007 M.A.S.S.H. comprehensive psychiatric evaluation noted that Plaintiff appeared anxious, with mood swings, racing thoughts, and

---

[3] Relying on Newell v. Comm'r of Soc. Sec., 347 F.3d 546 (3d Cir. 2003) and McCrea v. Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2003), Plaintiff contends that step two presents merely a *de minimis* burden. While this Circuit has in fact determined that the burden at step two is *de minimis*, both Newell and McCrea are distinguishable from the present case. In those cases, both claimants presented objective medical evidence in the form of laboratory findings to support their allegations of severe impairments, and the ALJ nevertheless rejected their claims at step two. By contrast, here, the Plaintiff has failed to present objective medical evidence to support her claim that her osteoporosis is a severe impairment and therefore Plaintiff failed to even meet the *de minimis* threshold.

distorted perception (Tr. at 174), however, this same facility which has been treating her for more than ten years concluded she was alert, fully oriented, and only diagnosed her with polysubstance abuse and mood disorders not otherwise specified. Other than poor impulse control, no mention of debilitating limitations were indicated in the report, and the proposed treatment plan only involved a referral for medication management and counseling (Tr. at 177 - 178). Taken together, these findings provide substantial evidence to support the ALJ's conclusion that Plaintiff's mental or emotional impairment has no more than a minimal effect on her ability to perform basic work activities.

Plaintiff also contends that the ALJ should have evaluated her psychiatric condition under the Commissioner's regulations and policy for drug addiction and alcoholism (Pl. Br. 22 - 27). This contention is without merit. An ALJ need only consider whether drug addiction and alcoholism were contributing factors if the ALJ first finds the Plaintiff to be disabled. 20 C.F.R. § 416.935(a). Here, the ALJ found no limitation in the activities of daily living, only mild limitation in social functioning, concentration, persistence, or pace, and no episodes of decompensation. See 20 C.F.R. § 416.920a(d)(1); see also 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00.C. As the Government correctly notes, the ALJ did not attribute Plaintiff's impairments to her positive lab results for marijuana, but merely noted that her drug use may account for some of her complaints. Based on substantial evidence in the record, the ALJ determined Plaintiff's depression and mood disorders were not severe or disabling. As a result, the ALJ did not need to consider the materiality of Plaintiff's drug and/or alcohol abuse separately from her other impairments.[4]

---

[4] Plaintiff has argued that the burden rests with the Commissioner to establish that drug abuse materially affects a disability (and thus precludes a disability finding) (Pl. Br. 22 - 23). This question was rendered moot by the ALJ's failure to find a disability. Nevertheless, although the Third Circuit has not addressed the issue, other rulings within this Circuit place the burden on a plaintiff to show that she would have been disabled even without the effects of substance abuse. See, e.g., Reed v. Barnehart, No. 07-5099, 2008 WL 2835331, at *8 (D.N.J. July 18, 2008); Thomas v. Astrue, No. 08-632, 2008 WL 4589751, at *2 (E.D. Pa. Oct. 15, 2008).

### 3. Asthma Impairment

Finally, Plaintiff challenges the ALJ's determination that her asthma is not a severe impairment. As with Plaintiff's previous claims, the Court rejects this argument. First and foremost, Plaintiff presented no evidence demonstrating that her asthma was severe or that she could not work as a result of it. During the April 15, 2007 consultative evaluation with Dr. Hoffman, Plaintiff told the doctor that she had no hospitalizations or ER visits due to asthma, and labs revealed a normal PFT (Tr. 152). Likewise, the May 17, 2003 RFC report conducted by DDS found that Plaintiff could do medium work, and her only limitation is avoiding concentrate exposure to fumes, odors, dusts, gases, poor ventilation, and other environmental irritants (Tr. at 168). Therefore, the ALJ's determination is supported by substantial evidence.

### B. Residual Functioning Capacity Determination

Plaintiff contends that the ALJ's RFC determination is without evidentiary foundation (Pl. Br. at 28). Specifically, Plaintiff argues that the ALJ: (1) failed to explain why she can perform the full range of light work (2) erred in finding Plaintiff suffers no non-exertional impairments as a result of her HIV/AIDS, mood disorders, anxiety, and asthma and thus (3) was required to utilize a vocational expert. The Court finds that the ALJ's conclusions pertaining to Plaintiff's HIV/AIDS, mood disorders, anxiety, and asthma require the assistance of a vocational expert.

Turning to the first issue, Plaintiff's argument that the ALJ failed to explain why she can perform the full range of light work is not supported by the law of this Circuit. An ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." Rivera v. Comm'r, 164 F. Appx 260, 262 (3d Cir. 2006) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). All that is required is that, reading the ALJ's decision in its entirety, there is "sufficient development of the record and [an] explanation of findings." Id. Here, the ALJ explained the evidence presented to him, weighed the evidence, and drew conclusions as to Plaintiff's physical and mental abilities. See Tr. at 19 - 21. Taken as a whole, the ALJ's decision is "comprehensive and analytic," Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981), and thus provides sufficient

explanation of the ALJ's determination as to the full range of light work.

Next, Plaintiff argues that the fatigue and diarrhea she suffers as a result of her HIV/AIDS, her mood disorders, anxiety, and asthma are non-exertional limitations. The Court agrees with Plaintiff's argument and therefore the assistance of a vocational expert is required to assess the full scope of Plaintiff's impairments, and evaluate whether a person with her exertional and nonexertional limitations would be able to perform general light work available in the national economy.

A claimant's impairments "may cause limitations of function or restrictions which limit [a claimant's] ability to meet certain demands of [the] job[]." 20 C.F.R. § 416.969a(a). Limitations are exertional if they affect the ability to meet the strength demands of a job. Id. Exertional limitations include sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 416.969a(b). Limitations that affect only a claimant's ability to meet demands of jobs other than strength demands are considered nonexertional. Non-exertional limitations include difficulty functioning due to anxiety or depression, difficulty maintaining concentration, difficulty seeing or hearing, and difficulty crouching. 20 C.F.R. § 416.969a(c).

Accordingly, because the ALJ acknowledged that the Plaintiff has in fact suffered from fatigue and diarrhea as a result of her HIV/AIDS,[5] these symptoms may qualify as non-exertional limitations insofar as they may affect her ability to meet the demands of jobs. Similarly, since the ALJ properly determined that the Plaintiff suffers from a mild medically determinable mental impairment in the areas of social functioning, concentration, persistence, or pace (Tr. at 20), and because the evidence shows that Plaintiff is often nervous, has difficulty concentrating at times, and is anxious, the Court finds that Plaintiff may have non-exertional limitations not considered by the ALJ in this regard as well. See 20 C.F.R. § 416.969a(c)(1)(i) and (ii). Finally, the evidence demonstrates that Plaintiff's asthma limits her ability to work in environments which involve

---

[5] See, e.g., Penny v. Barnhart, 2003 U.S. Dist. LEXIS 7097 (W.D. Tx., March 31, 2003) (noting that HIV symptoms such as diarrhea constitute non-exertional limitations).

-18-

exposure to certain fumes, odors, dusts, gases, poor ventilation, and other irritants in concentrate exposure, even if the impairment itself is non-severe.  Hence, this assessment by DDS demonstrates that Plaintiff may suffer from nonexertional limitation pertaining to this impairment. See 20 C.F.R. § 416.969a(c)(1)(v).

Given that Plaintiff may suffer from non-exertional limitations, this Circuit has held that the appropriate way to determine work capabilities in light of both exertional and nonexertional limitations is to refer to a vocational expert.  For example, Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 94 (3d Cir. 2007), held that "[w]hen a claimant asserts both exertional and non-exertional impairments, [ ] the ALJ cannot rely on the [grid] exclusively, but must consider other vocational evidence."  Similarly, this Circuit has held that in analyzing such claims, the ALJ must consider all of the relevant facts in the case, and specifically, vocational expert testimony.  Jesurum v. Secretary, 48 F.3d 114, 121 (3d Cir. 1995) (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2)); Washington v. Heckler, 756 F.2d 959, 967 (3d Cir. Pa. 1985) (vocational expert needed to deal with nonexertional impairments; reliance on grid is not sufficient). Therefore, the ALJ's failure to consult with a vocational expert requires this Court to remand on this specific issue.

The Court notes that in instances where an ALJ determines that Plaintiff has no non-exertional limitations, then a vocational expert need not be relied upon.  Here, however, where the ALJ merely discounted the severity of such limitations, the assistance of a vocational expert is required.  McGill v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 2508 (remanding where an ALJ summarily discounted claimant's depression as having "little or no effect on her occupational base of unskilled sedentary work"); Billingsley v. Comm'r of Soc. Sec., U.S. Dist. LEXIS 88634, at 13 (D.N.J. September 25, 2009) ("[E]ven where the ALJ has concluded that the claimant's non-exertional limitation is not significant or will not substantially diminish the occupational base, because the ALJ is not in the position to make such a determination about the import of a non-exertional limitation."); Chatt v. Astrue, 2008 U.S. Dist. LEXIS 58770 (July 29, 2008) (finding that a vocational expert was required even where "no severe nonexertional limitations exist[.]"); see

also <u>Sykes</u>, 228 F.3d at 266 (finding that the Commissioner cannot on his own determine whether or not a claimant's non-exertional limitations will have an impact on his occupational base)

Accordingly, under the circumstances here, a vocational expert must be relied upon to assess the full scope of Plaintiff's impairments, and evaluate the extent to which a person with her exertional and non-exertional limitations would be able to perform general light work available in the national economy.

## V.  <u>CONCLUSION</u>

For the reasons stated, this matter is **remanded** for further proceedings consistent with this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:           June __3__, 2010
Original:       Clerk's Office
cc:             All Counsel of Record
                File

-20-